## Case No. 12,445.

In re SCHEIFFER et al

[2 N. B. R. 591 (Quarto, 179); 1 Chi. Leg. News, 261; 1 Leg. Gaz. 30.] [1]

District Court, E. D. Minnesota. April Term, 1869

BANKRUPTCY — PARTNERSHIP — ELECTION OF ASSIGNEE—APPOINTMENT BY REGISTER— OBJECTIONS—HOW MADE.

1. In cases where co-partners are adjudged bankrupts. the partnership creditors only can

[1] [Reprinted from 2 N. B. R. 591, by permission. 1 Leg. Gaz. 30, contains only a partial report.]

participate in the election of assignees. The assignees must be elected by the majority in number and value of the creditors who have proved their debts, and not by the greater part of those present and voting. The election of the assignee, or the appointment by the register in cases where no election is made by the creditors, must be approved by the judge; and until approval the assignee has no power to act.

2. As the register can appoint only where there is no opposing interest, no creditor can change his vote after the meeting has adjourned, and thereby cause a failure to elect. If a mistake occurs, or the creditor has good cause to object to the choice made, he can make his objection to the judge, before whom the whole subject will be heard and determined. Where the judge refuses to approve the appointment of the assignee elected by the creditors, he may, under section 13, cl. 4 [of the act of 1867 (14 Stat. 522)], order a new election by the creditors. The fifth clause, section 18, applies to cases where the assignee has been removed or has resigned, and not to cases where the judge disapproves the action of the creditors.

[Cited in Re Wetmore, Case No. 17,466.]

[In the matter of Scheiffer & Garrett, bankrupts.]

TREAT, District Judge. This is a case of involuntary bankruptcy. At the meeting of creditors, held for the purpose, the greater part in number and value who had proved their debts against the co-partnership voted for Miltenberger as assignee, if the vote of Storrs & Brother is counted. It appears that the last-named vote was on the list of Miltenberger, who thus received all the votes cast; but that, after the meeting had adjourned, permission was given to erase the vote of Storrs & Brother, or withdraw the same, on the statement of the attorney who cast it, that it was cast by mistake for Miltenberger instead of Webster. Thereupon the register, after the said vote had been thus withdrawn, holding that no election had been made, as by law required, proceeded to appoint two assignees, Miltenberger and Wooster. The purpose of the register was thus to secure a due representation in the administration of the estate, of what seemed to him to be conflicting interests—an important object when conflicting interests exist, and the sole assignee is not likely to be impartial, but an object best effected, generally, by refusing to approve the choice made, and the appointment of a disinterested person.

The facts presented call for an interpretation of the law in several important particulars. Although there may be some doubt as to the true construction of sections thirteen and thirty-six, yet a careful analysis shows the following to be the requirements of the law: As this is a case of co-partnership bankruptcy, the creditors of the co-partnership who have proved their debts have the sole right to vote for assignee. "The choice is to be made by the greater part in value and number who have proved their debts, and not by the greater part," &c., of those present and voting. Such is the plain import of the statute, and the reasons for such a provision must readily suggest themselves. If the greater part in value and number of those who have proved their debts do not appear, or vote for the same person, then there is a failure on the part of creditors to make a choice. It is for the creditors, in the first instance, to choose more than one assignee, if they deem more than one to be necessary. If no choice is made by the creditors, and if there be no opposing interest, the register may appoint one or more; but his appointments, as well as the election by creditors, are in all cases "subject to the approval of the judge." In other words, until the judge has approved the selection, no one should enter upon the duties of assignee. That has been so frequently decided by this court, that it ought to be fully understood by this time. Indeed, some of the rules adopted when the bankrupt law first went into operation, were based on that plain provision of the act. If the judge disapproves, the election or appointment fails. The register has no power to approve, nor is his appointment more than the designation to the judge of a suitable person for the trust. Neither the second nor third clause of the thirteenth section is independent of the fourth clause. The act contemplates, throughout, that no person shall serve as assignee without the previous approval by the judge, and the rules establish, that in the cases which they specify (but in no others) the approval may be entered as therein specified. Those rules require the register, when he reports the choice made by creditors, to report also whether the selection is satisfactory; and the reason therefor, is the obvious fact that, being present at the election, and familiar with the details of the case, he is specially qualified to form a correct opinion as to the fitness, or unfitness, of the choice made, and thus aid the judge. It is true that one of the forms appended to the act and general orders, seems to be based on the idea that the register has, in some cases, the power to "approve and confirm," but there is nothing in the act to justify any such view.

In all cases not embraced within the specific terms of the third special rule for this district, the choice by creditors or designation by a register must be submitted to the judge for his official judgment and action thereon; and no assignment should be made by a register until the judge's approval is certified to him. As the register may appoint only when there is no opposing interest, no creditor can change his vote after the meeting has adjourned, and thereby cause a failure to elect, and give to the register the power to act independent of the other creditors; for if by such a change the choice is defeated, how can he say there is no opposition to his making an appointment—no opposing interest? The meeting having adjourned, and the creditors being without notice of what has since occurred, they would have no means of making their opposition known. If a mistake occurs, or a creditor before the approval has good cause for objecting to the choice made, he can make his objection to the judge, before whom the whole subject will be heard and determined. It is not only proper, but a conscientious discharge of duty, for the

register to bring to the notice of the judge all matters occurring before him in the conduct of the proceedings, so that the judge may be fully and fairly advised thereof. In this case he has done so, and very properly. When the judge refuses to approve the choice made by the creditors, shall he act under the fourth clause of section thirteen, and order a new election, or the fifth clause of section eighteen, relating to vacancies, whereby the court may itself appoint or order an election at a regular or special meeting called for the purpose? The fifth clause of section eighteen more properly pertains to a vacancy caused after an assignee has been duly appointed and approved, and the fourth clause of section thirteen to the cases where the judge refuses to approve.

In the case under consideration, however, it appears that Miltenberger was duly chosen by the creditors, and the subsequent withdrawal of the vote by Storrs & Brother was unauthorized. Hence the register had no authority to appoint. No objection has been made to Miltenberger, who is known to be fully qualified for the trust. This selection by the creditors will be approved and the appointment of Webster disapproved, as unauthorized by law. If any of the creditors shall hereafter show cause why an additional assignee should be appointed by the court, such an appointment will be made or a new election ordered.

Although not pertaining to this case, it is well to state, so that no possible misunderstanding or confusion may arise hereafter, that no assignment must be made to persons chosen or appointed assignees until an approval thereof has been duly entered of record. If the election or appointment is within the specific provisions of the third special rule, the entry of approval will be made as therein provided; otherwise there must be the formal action by the judge which the rule and the act contemplate. If assignments are hereafter made by registers without due compliance with the directions herein given, they will be set aside. In all cases whatsoever, the approval of the judge must be certified to the register before he executes an assignment; and a register's appointment, as well as the creditor's choice, if not embraced within the term of the special rule, must be specially submitted to, and passed upon by the judge, before further action is had thereon.

SCHELL (ABRANCHES v.). See Case No. 21.

SCHELL (BAILEY v.). See Case No. 745.

SCHELL (BENKARD v.). See Case No. 1,307.

SCHELL (CHRIST v.). See Case No. 2,699.

SCHELL (FIELD v.). See Cases Nos. 4,771 and 4,772.

SCHELL (GREENLEAF v.). See Cases Nos. 5,781 and 5,782.

SCHELL (HUTTON v.). See Cases Nos. 6,961 and 6,962.

SCHELL (IRVIN v.). See Case No. 7,072.

SCHELL (JONES v.). See Case No. 7,493.

SCHELL (KNIGHT v.). See Case No. 7,887.

SCHELL (KNOEDLER v.). See Cases Nos. 7,889 and 7,890.

SCHELL (REIMER v.). See Case No. 11,676.

SCHELL (WETTER v.). See Case No. 17,-470.